# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PENNIE L. KEYES-ZACHARY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 10-CV-529-TLW |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Pennie Keyes-Zachary seeks judicial review of a decision of the Commissioner of the Social Security Administration denying her claim for disability insurance benefits and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act ("SSA"), 42 U.S.C. §§ 416 (i), 423, and 1382c(a)(3)(A). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. [Dkt. # 8].

Plaintiff filed her application for disability insurance and SSI benefits on June 7, 2004, claiming an onset date of March 15, 2002. [R. 61, 290]. On February 14, 2007, the Administrative Law Judge Gene Kelly ("ALJ") entered an order denying benefits. [R. 18]. Following plaintiff's appeal to this Court the case was remanded on April 17, 2009, to conduct additional administrative proceedings.[1] Judge Kelly was re-assigned to the case. He conducted a *de novo* hearing on September 22, 2009. [R. 971]. Following entry of his decision denying benefits, the Appeals Council denied plaintiff's request for review on June 24, 2010. [R.452, 465]. The decision of the

---

[1] The case was remanded upon motion of the Commissioner to allow the ALJ to resolve a conflict between the vocational expert's testimony and information contained in the Dictionary of Occupational Titles, ("DOT") pursuant to Social Security Ruling (SSR) 00-4p. See Keyes-Zachary v. Astrue, Case No. 08-CV-473-FHM. [Dkt. # 16, 21].

Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481. On August 17, 2010, plaintiff filed the subject action with this Court. [Dkt. # 2].

The role of the Court in reviewing a decision of the Commissioner under 42 U.S.C. § 405(g) is limited to determining whether substantial evidence supports the decision of the ALJ and whether the applicable legal standards were correctly applied. See Briggs ex. rel. Briggs v. Massanari, 248 F.3d 1235, 1237 (10th Cir. 2001). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. Casias v. Secretary of Health & Human Service, 933 F.2d 799, 800 (10th Cir. 1991).

A claimant for disability benefits bears the burden of proving that she is disabled. 42 U.S.C. § 423 (d)(5); 20 C.F.R. §§ 404.1512(a), 416.912(a). "Disabled" is defined under the Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To meet this burden plaintiff must provide medical evidence of an impairment and the severity of her impairment during the relevant adjudicated period. 20 C.F.R. §§ 404.1512(b), 416.912(b). Disability is a physical or mental impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques" administered by "acceptable medical sources" such as licensed and certified

psychologists and physicians. 42 U.S.C.§ 423 (d)(3), and 20 C.F.R. §§ 404.1513, 416.913.

Plaintiff raises two issues on appeal:

(1) Whether the ALJ failed to properly evaluate the medical source evidence.

(2) Whether the ALJ failed to perform a proper credibility determination.

[Dkt. # 20 at 2].

## Background

Plaintiff was born on February 26, 1961. [R. 405]. She was 41 years old on her alleged onset date of disability, and 48 years old at the time of her second hearing before the ALJ. [R. 405, 977]. Plaintiff has a 10th grade education. During some of her school years she was enrolled in special education classes for math and reading. [R.477, 819, 978]. Plaintiff has been married and divorced four times and does not have children. [R. 272]. Plaintiff resides in a mobile home with her mother and her nephew. Her mother pays the rent and expenses. [R. 978]. Plaintiff is 5'1" tall and weighs 171 pounds. [R. 405]. Her work history consists of a cashier at a gas station, server/cook in a school cafeteria, seamstress/sewer and product controller for a pillow factory (American Fiber Company), and cashier/stocker in a liquor store (Hager Retail Liquor). [R. 79-85, 516].

In 2001, while working at American Fiber Company plaintiff slipped in some water and fell striking her right elbow and tail bone. [R. 818]. She complained of some discomfort in her neck and between her shoulder blades and sought treatment on a few occasions at Jane Phillips Medical Center in Bartlesville, Oklahoma. [R. 157]. Plaintiff returned to work shortly after the accident. She was unable to perform her work as a product controller, and was reassigned to her former position sewing pillows. [R. 86]. Plaintiff then decided to quit. [R. 157]. She filed a worker's compensation action and settled her claim for $5,000.00. [R. 71]. Prior to settlement, the worker's

compensation court determined that plaintiff sustained zero percent permanent partial disability to her right shoulder, one percent permanent partial disability to her neck, two percent permanent partial disability to her back, and zero percent permanent partial disability to her right elbow. [R. 67]. Plaintiff was last employed on March 15, 2002, in her position as a cashier/stocker for Hager Retail Liquor. [R. 407].

On January 10, 2007, plaintiff was involved in an automobile accident. She was seen at the Jane Phillips Medical Center complaining of neck and back pain, neck strain and hand contusion. [R. 373]. X-rays of the cervical spine were negative, showing vertebral body heights and disk spaces within normal limits. X-rays of the lumbar spine showed mild degenerative changes with no acute fracture or dislocation. X-rays of the left wrist were negative with no evidence of fracture or dislocation. [R. 370-376].

Plaintiff alleges she has had chronic back, leg, neck, wrist, hand, shoulder, elbow and neck pain, since 2001 when she fell during work at the American Fiber Company. [R. 819]. At the second hearing before the ALJ, plaintiff identified her impairments as anger, frequent trips to the bathroom, pain in the lower back, neck, right shoulder, right elbow and knees, arthritis in her hands and fingers, cardiovascular pulmonary spasms, history of ulcers, hearing loss in the left ear, asthma and daily headaches. [R. 981-987].

Between the first and second hearing before the ALJ, plaintiff participated in regular out-patient counseling at the Grand Lake Mental Health Center, from September 10, 2008 to September 14, 2009. [R. 818-824, 1H. 1I]. Records indicate that plaintiff was self-referred. She was instructed on medication management, and her therapeutic goals were to decrease depression and anxiety, and improve coping skills. [R. 818, 823]. In conversations noted by her counselor, plaintiff stated that

she walks to her father's house several times a week to socialize with him [R. 890, 893], she drives her father to a bar and sits with him while he drinks beer [R.948], she drives her friends around and has ended up at a local pub [R. 956], she plays daily with her four [to six] dogs [R. 902, 904], she is paid by her friends several times a week to drive them to the casinos and is given money to play casino games[2] [R. 960], after her father purchased her a van she is able to "get to and from places on her own" and no longer has to walk "in the heat" [R. 967], she earns money taking an elderly lady to the casino and to other places for various reasons [R 896], she visits a good friend almost daily [R. 899], she runs errands for her friends every day [R. 946], she has written several notebooks full of scriptures from the Bible on different topics [R.899], she has five huge notebooks of scriptures that are organized by subjects [R. 901], she writes scriptures from the time she wakes in the morning until she goes to bed [R. 901], if approved for social security disability benefits she is going to move out of her mother's house into a place of her own, buy her own food, and pay off her fines[3] [R. 902], she has "walked from across town" to attend therapy sessions [R. 903], she enjoys being paid to run errands for her friends but is concerned she will be "caught" by the authorities because she does not have car insurance. [R. 892]

### Decision of the ALJ

The ALJ found that plaintiff has not engaged in substantial gainful activity since March 15, 2002, the alleged onset date.  Plaintiff's severe impairments were determined to be problems with

---

[2] Clinical notes show, "She has been running her friends on errands and to the casino. She seems to find herself there a lot but typically she doesn't mind because her friends will pay for the gas and usually give her some playing money." [R. 963].

[3] In regard to legal history, plaintiff has received multiple citations regarding her pet dogs because she owned as many as seventeen dogs at one time. [R. 838].

headaches, vertigo, shortness of breath, hearing, vision, elbows, back, knee, heart, neck, gallbladder, shoulder, hands, stomach, bladder and feet. [R. 467]. Her non-severe impairments were determined to be gastroesophangeal reflux disease and problems with her skin. [R. 468]. The ALJ found that plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments, specifically listings 12.04 (affective disorders) and listing 12.06 (anxiety related disorders). [R. 468]. Plaintiff has moderate restrictions in her daily living activities, social functioning and in concentration, persistence and pace, with no episodes of decompensation. [R. 468].

The ALJ found plaintiff has the residual functional capacity ("RFC") to perform light to sedentary work, with extensive limitations to accommodate her severe impairments. The ALJ limited plaintiff's work activities to only lifting and/or carrying 20 pounds occasionally and 10 pounds frequently to accommodate her pain and to limit stress on her back. He limited climbing, squatting, stooping, crouching, crawling, and operating foot controls to accommodate her back and knee problem and curtail any "unbearable pain." She is to avoid rough, uneven surfaces, unprotected heights, and fast and dangerous machinery to accommodate her complaints of dizziness and loss of balance. Her work is not to involve fine vision and it is to take place in a low noise environment, to accommodate that she wears glasses and has earring loss. She is to be provided easy access to restrooms, to accommodate her occasional bouts of diarrhea caused by her gallbladder. Although the record showed that she had not been using her inhaler, she is to avoid dust, fumes, and gases, to accommodate her asthma; and wet and hot environments to accommodate her breathing problems. [R. 475].

The ALJ found plaintiff's testimony less than credible concerning the intensity, persistence

and limiting effects of her symptoms to the extent they are inconsistent with his RFC assessment. [R. 476]. The ALJ found that plaintiff can not perform her past work as a cook, stuffer, sewer, inspector and retail cashier/stocker, but based on the testimony of the vocational expert, the ALJ found she is capable of unskilled light occupational work, such as, arcade attendant, bench assembly; and sedentary work, such as, order clerk and clerical mailer, and that these jobs exist in sufficient numbers in the regional and national economy to preclude disability. [R. 477]. The ALJ concluded that although plaintiff suffered from multiple impairments, she could perform the above-mentioned light and sedentary unskilled work. This finding was made at step five in the sequential evaluation outlined in Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing the five steps in detail).[4]

## Discussion

As her first assignment of error, plaintiff claims the ALJ failed to properly consider, evaluate and discuss the medical source evidence. On this point, plaintiff's argument addresses only the substantiality of the evidence to support the ALJ's decision regarding the medical source evidence, rather than challenging the legal procedure that he applied. Plaintiff provides a summary of select medical findings cited by the ALJ, to wit, the impression formulated by M.R. Moreanas, M.D. on September 9, 2005 of lumbar disease, spondylosis with facet arthropathy and slight L4-L5 retro-listhesis and scoliosis; x-rays of plaintiff's lumbar spine taken on January 10, 2007 showing mild

---

[4] The five-step sequence provides that the claimant (1) is not gainfully employed, (2) has a severe impairment, (3) has an impairment which meets or equals an impairment presumed by the Secretary to preclude substantial gainful activity, listed in Appendix 1 to the Social Security Regulations, (4) has an impairment which prevents them from engaging in their past employment, and (5) has an impairment which prevents them from engaging in any other work, considering their age, education, and work experience. Ringer v. Sullivan, 962 F.2d 17 (10th Cir. 1992) (unpublished) (citing Williams v. Bowen, 844 F.2d at 750-52).

degenerative changes; a diagnosis of William D. Smith, M.D. on July 26, 2008 of cervical spondylosis and osteoarthritis; and x-rays of her knees taken on July 26, 2008 showing degenerative changes, medial compartment narrowing and incomplete fusion of the tibial epiphysis. Plaintiff argues the ALJ cited this evidence "but ignores the import of these objective medical findings." [Dkt. # 20 at 3]. To formulate her argument, it is evident that plaintiff strategically selected incomplete medical evidence cited in the ALJ's decision while omitting the remaining medical evidence the ALJ cited to support his decision, especially the record of extensive diagnostic testing. A summary of the medical source evidence cited and relied on by the ALJ follows:

| | |
|---|---|
| December 1, 2002 | Examination of right knee showed medial joint line tenderness and a positive McMurray's sign, and a <u>small</u> <u>amount</u> of effusion present, <u>negative</u> straight leg raise. Examination of her right hand demonstrated positive Phalen's sign with a <u>negative</u> Tinel. The x-rays of her right knee showed only <u>mild</u> degenerative changes with <u>no</u> bony injury. Clinical assessment, right knee mechanical symptoms and right hand numbness. Arthroscopy of the right knee was recommended as a meniscus tear was thought likely. [R. 471, 129], emphasis added..[5] |
| November 18, 2003 | Jay Bryngelson, MD assessment <u>mild</u> residual cervical strain type symptoms following a work-related injury that occurred 2 years earlier.[6] [R. 471, 157] |
| March 12, 2004 | Profound hearing loss in right ear. [R. 471]. |
| June 30, 2004 -August 27, 2004 | |
| | Physical therapy records show progress with increased range of motion but continued hyper tonicity, soreness and stiffness in cervical musculature. |

---

[5] This report was made less than nine months following plaintiff's fall at the American Fiber Company.

[6] This exhibit does not support plaintiff's claim that her neck is getting worse with time. Dr. Brynegelson examination notes show x-ray of the cervical spine was unremarkable. Foramina are open. No significant vertebral body spurring or loss of cervical lordosis or significant facet arthritis. [R. 157].

[R. 471, 161].

September 22, 2004   MRI on thoracic spine is completely normal. [R. 471, 228]

November 19, 2004   Gary Lee, MD physical consultant, opined plaintiff has decreased, painful ROM with tenderness in the cervical spine and in the lumbar spine. Right elbow has diminished extension by 5 degree. She has neck and back pain. [R. 186-187, 189-191].[7]

November 30, 2004   ECG showed very rare cardiac condition.[R. 471, 211].

February 10, 2005   X-ray of lumbar spine showed only <u>mild</u> degenerative changes, greatest at the facet joints at L5-S1, with <u>slight</u> reversal subluxation of L4 on L5, <u>slight</u> scoliosis, and <u>slight</u> posterior displacement of the distal coccyx. [R. 471, 209] (emphasis added).

March 9, 2005   Sarah Little, M.D. noted plaintiff's asthma had stabilized with use of hand held nebulizer. [R. 471, 220].[8]

September 9, 2005   M.R. Morenas, MD, medical source opinion, found <u>mildly</u> restricted lumbar flexion and extension with motor strength at least 4-5 bilaterally in the lower extremities in all muscle groups. [R. 471, 585]. Clinical impression was lumbar degenerative disk disease, spondylosis with facet arthropathy and <u>slight</u> L4-L5 retro-listhesis and scoliosis. [R. 472, 585] (emphasis added).

September 28, 2005   Dr. Little observed plaintiff gained ten pounds and pain was reported as a 4 on a 1-10 scale. [R. 472, 251]

July 11, 2006   Sonogram of gallbladder is negative. [R. 472, 609].[9]

August 21, 2006   Minor Gordon, PhD, a consultative psychologist, completed a mental medical source statement opining plaintiff's mood was <u>mildly</u> depressed but that she did not have moderate, marked or severe limitations in mental work-related

---

[7] In addition, Dr. Lee opined plaintiff has normal range of motion without deformity in her right shoulder, elbow, wrist, hand and all digits of her right hand; and in her left shoulder, elbow, wrist, and hand and all digits of the left hand. [R. 187].

[8] Dr. Little noted plaintiff continues to smoke about a pack of cigarettes a day. [R. 220].

[9] The complete report states: the sonogram of the gallbaladder revealed no evidence of wall thickening, and there is no cholelithiasis. Pericholecystic fluid is not seen. The common bile duct is normal in size. [R. 609].

|  |  |
|---|---|
|  | functioning.  [R. 472, 272-276] (emphasis added). |
| September 11, 2006 | Sri Reddy, MD, a consultative physician, completed a physical medical source statement, and opined plaintiff had <u>negative</u> signs of impingement on the shoulder and tenderness over the patella.  Clinical assessment: neck pain, low back pain, bilateral knee pain, migraine headaches, and right shoulder pain.  X-rays showed bilateral degenerative changes to knees, medial compartment narrowing bilaterally and incomplete fusion of the tibial epiphysis bilaterally.  Dr. Reddy opined plaintiff could perform light work, with the ability to frequently bend, squat, crawl, climb and reach.  Dr. Reddy opined plaintiff could "sit for 8 hours in an 8-hour day; stand for 8 hours in an 8-hour day; and walk for 8 hours in an 8-hour day; lift and /or carry up to 25 pounds and never lift or carry objects weighing 26 pounds or more." [R. 472, 281-286] (emphasis added). |
| September 21, 2006 | Plaintiff was seen at Jane Phillips Medical Center due to "epigastric pain" however, radiographs of plaintiff's abdomen were negative.[10]  [R. 472, 604]. |
| November 2, 2006 | Dr. Little noted plaintiff was not using an inhaler at home, she was doing "okay," and her asthma is under "excellent control."  Dr. Little refilled plaintiff's prescription for Lortabs, but limited them as she does not want her to use them routinely.[11]  [R. 473, 652]. |
| January 10, 2007 | X-rays of cervical spine were negative and x-rays of lumbar spine revealed "<u>mild</u> degenerative changes." [R. 473, 670] (emphasis added). |
| April 6, 2007 | Admitted to Jane Phillips Medical Center for recurrent pelvic pain, underwent laparotomy due to ovarian adhesions and cyst formation on left ovary.  Plaintiff was released in three days tolerating a regular diet.  [R. 473, 344]. |
| January 9, 2008 | Plaintiff underwent outpatient Nuclear Cardio Exercise Thallium Test, on complaints of chest pains.  Testing shown normal ECG response, without chest pain, good functional capacity, and normal SPECT, no evidence of ischemia or infarction.  [R. 473, 398] |

---

[10] A follow-up abdominal CT Scan on June 22, 2007, showed the liver and spleen intact, adrenal glands normal size, gallbladder, pancreas and abdominal aorta unremarkable, no renal calculi or hydronephrosis, no pneumoperitoneum, small bowel not unusually distended, no adenopathy in abdomen or pelvis and no bladder-filling defects. [R. 333].

[11] On May 8, 2005, Dr. Little's examination notes indicate she warned plaintiff of the "addiction property" of Lortabs and instructed her to take it only when needed. [R. 652].

| | |
|---|---|
| January 30, 2008 | Plaintiff underwent cardiac catheterization showing <u>mild</u> <u>nonobstructive</u> coronary artery disease. Clinical assessment: continue aggressive primary prevention. [R. 473, 398] (emphasis added) . |
| July 26, 2008 | Plaintiff sought treatment from William Smith, MD due to musculoskeletal complaints of pain in the neck and lower back. Dr. Smith opined plaintiff had <u>unlimited</u> cervical and dorsolumbar motion, neurological examination was <u>negative</u> and radiographs of cervical spine only <u>mild</u> spondylosis and probably osteoarthritis. Plaintiff requested a prescription for Lortab, which Dr. Smith agreed to on "a one time basis."[12] [R. 474, 817] (emphasis added).. |
| October 27, 2008 | Comprehensive assessment by Bob Blasdel, MS, LADC, LMFT. "Upon evaluation, he found the claimant's readiness for change to be fair at the current time and he stated she focuses extensively on her orthopedic problems, dating back to 2001, when the claimant was injured at work. Mr. Blasdel stated the claimant reported she has really not worked much since the accident as the pain has been 'too great' . . . . Following evaluation, Mr. Blasdel recommended pharmacological management and individual rehab. [R. 474, 822-3]. |
| December 3, 2008 | Responding well to medication. [R. 474, 869]. |
| December 19, 2008 | Consultative mental health examination conducted by Stephanie Crall, PhD. Dr. Crall opined plaintiff has major depression disorder and chronic anxiety disorder.[13] [R. 474]. |
| September 10 2008 to September 14, 2009 | |
| | Medication management and counseling at the Grand Lake Mental Health Center. "Throughout the sessions, the claimant has reported medication compliance with no side effects and on all visits, the claimant was noted to be 'working towards her goals and discharge planning' with no inpatient hospitalization." [R. 474, 859-907, 933-976]. |

Citing the above medical evidence, the ALJ concluded:

The objective evidence indicates that, contrary to claimant's reports of disabling pain,

---

[12] Plaintiff stated her neck and back problems began when she fell in 2001. [R. 817].

[13] In his RFC assessment and limitations, the ALJ accommodated each of the moderate and markedly restricted limitations indicated by Dr. Crall. <u>See</u> [R. 841-842.]

11

> she has exhibited relatively moderate symptoms.  The record fails to demonstrate the presence of any pathological clinical signs, significant medical findings, or any neurological abnormalities that would establish the existence of a pattern of pain of such severity as to prevent her from engaging in any work on a sustained basis.

[R. 474]. Contrary to plaintiff's argument, this conclusion is not "disfavored boilerplate." Rather the ALJ based his determination from a comprehensive review of plaintiff's seven-year medical history, and this review is substantial evidence to support his decision.

Plaintiff argues her complaints of pain to physicians on numerous occasions is evidence to support the severity of her symptoms. The Court disagrees. In this instance, the ALJ cited the results of plaintiff's numerous radiology reports and concluded that there are "few objective findings that would substantiate the level of pain that she alleges." Based on an independent review of the evidence, the Court finds that the ALJ's decision is supported by substantial evidence. Any argument to the contrary is solely based on an improper re-weighing of the evidence. The possibility of drawing two inconsistent conclusions from the evidence does not prevent substantial evidence from supporting the Commissioner's decision. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). The Court finds no merit in plaintiff's first issue on appeal.

As her second issuer of error, plaintiff contends the ALJ failed to perform a proper credibility determination. Plaintiff contends the ALJ's credibility finding is merely a conclusory statement using disfavored boilerplate language. To support her claim, plaintiff primarily relies on her twenty-five doctor visits between June 2004 and June 2006, mostly based on complaints of pain, and her refill of prescription pain medication. She also challenges the ALJ's evaluation of the evidence.

To support his credibility determination the ALJ found that: (1) there are few objective

findings to substantiate the level of plaintiff's alleged pain[14], (2) there is no evidence of medical treatment from September 28, 2005 to April 27, 2006, (3) her allegation of restricted daily activities is self-imposed, (4) her medications have been relatively effective when taken as prescribed, (5) she appears to be stable on medication, (6) with no side effects from medication, (7) her restricted daily activities are outweighed by other factors considered in his decision, and (8) her claim that her symptoms are constantly present cannot be substantiated in the record. The ALJ concluded that plaintiff's "description of the severity of the pain has been so extreme as to appear implausible and the description of the symptoms is unusual, and is not typical for the impairments that are documented by medical findings in this case." [R. 476]. Quite simply, the ALJ found that plaintiff's extreme allegation of pain has no objective medical foundation. The Court finds that the ALJ's finding is based on substantial evidence and well documented by reference to the record.

The ALJ's finding that plaintiff could perform the unskilled sedentary job responsibilities such as an order clerk or a clerical mailer is well supported in the record.[15]

---

[14] The ALJ found plaintiff had a normal MRI of the thoracic spine, x-rays of the lumbar spine showed mild degenerative changes, x-rays of the bilateral knees showed degenerative changes, x-rays of the left knee were essentially normal, x-rays of cervical spine were negative, x-rays of the lumbar spine showed only mild degenerative changes, examination showed unlimited cervical and dorsolumbar motion, neurological examination was negative, x-rays of the cervical spine showed mild spondylosis, and tests showed only mild obstructive coronary artery disease.

[15] The ALJ need only produce evidence that plaintiff could perform one or more occupations existing in significant numbers. Evans v. Chater, 55 F.3d 530, 532 (10th Cir. 1995). The ALJ produced evidence of two light exertional occupations and two sedentary exertional occupations that the plaintiff could perform. Plaintiff does not allege any conflict between the job requirements listed in the DOT and the vocational expert's testimony that plaintiff could work at such light exertional work as an arcade attendant, bench assembly, or sedentary work such as an order clerk or clerical mailer. The Commissioner needs to only point to one or more occupations that plaintiff could perform. 20 CFR §§ 404.1566(b), 416.966(b), Liessmann v. Barnhart, 49 Fed. Appx. 883, 886 (10th Cir. 2002) (unpublished). (Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1: 10th Cir. R. 32.1.)

An ALJ's credibility findings warrant particular deference because he is uniquely able to observe the demeanor and gauge the physical abilities of the claimant in a direct and unmediated fashion. White v. Barnhart, 287 F.3d 903, 909 (10th Cir. 2002). Further, the ALJ linked his credibility determination to supporting evidence. In Kepler v. Chater, 68 F.3d 387 (10th Cir. 1995), the court held the ALJ's credibility determination was inadequate because the ALJ simply recited the general factors he considered and then said the plaintiff was not credible based on those factors. The court explained that the ALJ must refer to the specific evidence he is relying on in determining credibility and link his credibility findings to specific evidence. Id. at 391. In the instant case, the ALJ complied with this standard. In Qualls v. Apfel, 206 F.3d 1368 (10th Cir. 2000), the court stated that "our opinion in Kepler does not require a formalistic factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of Kepler are satisfied." Id. at 1372.

## Conclusion

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence and that the correct legal standards were applied. Thus, the Court AFFIRMS the decision of the Commissioner denying disability benefits to plaintiff.

SO ORDERED this 15th day of September, 2011.

T. Lane Wilson
United States Magistrate Judge